Good morning, Your Honors. Jeff Lauderdale, Sarah Antonucci, Kelphie Halter, and Griswold for the Appellant Jack Parker. I'd like to reserve three minutes for rebuttal, if I may. Your Honors, the proceedings leading up to Jack Parker's trial and conviction were an This Court granted a Certificate of Appealability on four issues, but in reality it was five issues because we have two speedy trial issues. We have a speedy trial problem, both before the indictment and between the indictment and the trial. Mr. Parker wins on all five issues. This was just an absolute constitutional nightmare from the beginning, and the writ should have been granted below. I can take these five issues in any order, but I'm going to start with the failure to include a lesser included offense in the charge to the jury. Mr. Parker was convicted of second-degree murder. All of the charges that were given to the jury were all intent-based. They were all murder charges. There was a voluntary manslaughter charge, but there was no involuntary charge at all, nothing based on negligence whatsoever. The problem there is that the Constitution requires a lesser charge when there's a rational basis for it. The facts of this case are clear. There was no evidence that Mr. Parker intended to kill his victim, Sandra Brady. Beyond there were some bruises on her body, but there was no testimony that the bruises happened that night. And then beyond that, there were a couple of questionable witnesses that the state had. Cesar Medina and Bonnie Flowers. Cesar Medina is a liar. There was testimony at trial that he had told another witness that he was willing to lie to get Jack Parker out of the area where they lived. He and Bonnie Flowers, the woman that was in the same apartment with him, changed their story a number of times when they said that they saw an altercation across the way. What was the state court rationale for denying the instruction? The state court rationale for... They found no prejudice. The state court found that the, essentially, that the evidence was overwhelming, but the evidence was thin. The evidence was not overwhelming. And the district court compounded that error, because what the district court said was that the fact that he was convicted of the higher charge, the murder charge, negated the need for the lesser-included offense charge. And that is just absolutely wrong from a constitutional standpoint. The Supreme Court has said that's wrong in Keeble v. U.S. in 1973. So the standard of review that we should be applying, is it the AEDPA standard of giving a lot of deference to the state court finding? Yeah, we're governed by AEDPA, absolutely. But the deference notwithstanding, the analysis was wrong. Even with the deference, we can overcome that standard. What the district court said about this was that there was no constitutional problem, because the higher charge was found by the jury, and therefore it negated the need for the lesser charge. Right, but even if the district court is wrong, you still have to overcome the AEDPA standard vis-a-vis the state court, right? That's correct, right. We're here under AEDPA. There's no doubt about that. What evidence was admitted at trial that would have supported the trial court giving the jury an instruction on gross negligence as opposed to an intent? Thank you, Your Honor. A number of things. First of all, Mr. Parker gave a statement that Ms. Brady, the woman who died, asphyxiated during sex. She lived a very rough life, there's no doubt about that. She had severe health problems. She was a severe, severe alcoholic. Her son testified that she drank half a gallon of Bacardi a day for 25 years. She disappeared for years at a time until her son found her on the streets. But what is that? How is that evidence of negligence as opposed to intentionality? Your Honor, in order to get around the standard, all we have to show is that there was a rational basis for the instruction. Mr. Parker doesn't have to prove that it was negligent. Just that there was a rational basis so that the jury could have decided that. Sure, so connect the dots for me between her personal history and the fact that there is a dot to connect to make her death negligent as opposed to intentional on the part of the defendant. It's a combination of the health problems that she had combined with the lack of hard evidence of intent on that night. Those two things together give the rational basis for the negligence charge. It's a lack of evidence which gives us the rational basis. Putting that together with all we have to show is that it could have happened that way. There's a rational basis for it. That's what we have because we have a victim who could have died the way that Mr. Parker said that she died. He said that she asphyxiated during sex and that she could have had a heart attack. She could have had a number of things. The medical examiner testified that there was evidence of a previous heart attack I think six weeks prior. This is a woman who just had a ton of health problems and that is the evidence that gives the rational basis combined again with the lack of hard evidence of an intentional crime that night. That gives us the rational basis for the lesser included offense. The older and newer bruising and broken bones, that's insufficient evidence of a beating or an intentional crime? There was no evidence that the bruising occurred that night. Some of those bruises were very old. Some of them also new? Nobody could testify that they occurred that night. There was some bruising, certainly, but this is a woman who, again, lived a very rough life and lived on the streets. She was bruised. She was beaten. There was no evidence presented that Mr. Parker did that to her that night beyond the... Except for by people who you challenged, the people who said they saw him swinging at her and that kind of evidence. Not only people who I challenged, but people who the lead detective on the case challenged. The lead detective on the case, Richard Bebeke, testified that there is no way that these people could have seen what they said they saw. They said they saw it from across the way. He said, there's no line of sight there. They couldn't have seen it. So, it's not just me challenging it. Not only that, they changed their story three times. So it's not... Yes, I'm challenging them, but the evidence challenges them. They made up their story and another witness testified that Mr. Medina told her that he was willing to lie to get Jack Parker out of the area. So the witnesses are very incredible and... I could ask a question. I thought this was raised as an ineffective assistance of counsel claim in your brief as opposed to a freestanding claim. That's correct. It's a strict... Because the heading of your brief says that his counsel was ineffective for failing to advocate or present to the jury an instruction. So did the trial counsel even seek this instruction? Was it denied by the trial court? Trial counsel did not seek it. Mr. Parker sought it on his own. And it was not... Yeah, it was denied by... So there was an actual denial by the state trial court? Or did the state trial court say... I'm asking because I don't know the answer. I believe they just ignored Mr. Parker. I think that's par for the course throughout this case. Well, that's a big problem when you have somebody who has counsel and who is trying to do things pro se at the same time. I understand that. I understand that. But yes, you're correct. It is an ineffective assistance of counsel claim. It's a Strickland claim. So as we know from the Supreme Court, double deference is due in the ineffective assistance of counsel claims. Double deference is due to the state court. Standard is what it is. Correct. Right. Maybe you want to address another of your issues. Yes, Your Honor. I'll move on to the speedy trial issues if I may. Mr. Parker spent two years and three months in prison between his arrest and indictment. He spent two years and five months in prison between his indictment and his trial. He was arrested in 2000. The parole violation that brought him back to prison, this crime or something different? Something different. Oh, no. I'm sorry. The parole violation was this, but it was based on the previous, but yes, this was the parole violation. Okay. The charges in this case were a parole violation of past charges. Correct. Okay. So he's being kept pre-indictment for two years based on these potential charges that occurred two years later. Correct. And nothing else in terms of any parole violation? This was the parole violation. That is correct. And the Michigan court found no justification for the delay. They said that. You know, in fact, everything was so bad here, the Department of Corrections was even sending letters to the prosecutors to ask what the heck was going on. So every single element affecting the Fifth Amendment, pre-indictment, speedy trial issue is met here. The only element that's even in dispute at all is prejudice. And you know, I've already talked about the lack of credibility of the state's evidence. You know, and the district court, piggybacking on what the state court of appeals did, found that there was some prejudice. And the prejudice was the disappearance of witnesses. But what witnesses disappeared other than the neighbors, the Nazacases, who were reported at trial by the police to have said that they didn't hear anything. So there was favorable testimony about what the Nazacases would have said from the police officer, which could arguably be even better than the Nazacases actually testifying. So what is the real prejudice here? Well, that is the prejudice, Your Honor. And if I may disagree with what the police said at trial, they didn't mention the Nazarcos, and I think that's how you say it. They didn't mention the Nazarcos by name. What he did was he excluded them from the list of people who heard something when he talked about Mr. Medina and Ms. Flowers. He just didn't mention them. So what we have as a situation is, you know, he doesn't mention them specifically. He just doesn't include them. Okay, and there was no way that from that exclusion that the jury could possibly infer that the Nazarcos would have contradicted Medina and Flowers. They didn't get to hear the Nazarcos say that they were home. They didn't get to hear them say that they would have heard something had something occurred. And they didn't get to hear them say that nothing did occur. The detective didn't tell the jury that the Nazarcos were in a better position than Medina or Flowers to know or hear something. And again, Medina and Flowers were in no position at all. So it is the Nazarcos, and the district court itself said that the Nazarcos testimony would have benefited Mr. Parker's case. So the district court agreed that there was prejudice. They just said it wasn't substantial prejudice. It should have granted the writ as soon as it found prejudice, because it certainly was substantial. If I may move on to the Sixth Amendment speedy trial problem, he then spent a Let me make one question. Does LAVOSCO require for the due process Fifth Amendment pre-indictment speedy trial claim that there be an intent of the government to gain a tactical advantage? Is that part of the standard? No. This court, in a case called Monzo v. Edwards, I think it was called, Monzo was the plaintiff, said that it's either the state seek a tactical advantage or the state have all of its evidence in order and then cease its investigation without further investigation. The state had all of its witnesses in line here, and I see my time is up. May I finish? Please. The state had all of its witnesses in its pocket by the end of 2000. All 15 of its trial witnesses had been interviewed, had provided affidavits, had been lined up by the end of 2000, and that's what Monzo said. This case is the case that Monzo is talking about. When it talks about, you know, so it's either tactical advantage or you just, you're done and you don't do anything, and that's what they did here. So this case is Monzo. This is what you guys were talking about. If there is a speedy trial violation and we were to grant habeas, what would be the remedy? Would it be that you would, your client would never be tried or would he be tried again? At this point with the speedy trial issue, he would not be tried again. He's been in prison for 13 years now, 14 years. So is that always the remedy in a speedy trial violation case? It's usually the remedy in a speedy trial violation case because the, you know, the constitutional harm is that the state... That there wasn't a speedy trial. So you can't have a speedy trial 10 years later or 20 years later. Correct. But here, Mr. Parker has served his time. Thank you. Thank you. Good morning. May it please the court. Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden. I guess I'll start with the failure to request this lesser included involuntary manslaughter instruction. Counsel's argument is way off. Keeble versus the United States is not a constitutionally based opinion. It specifically says it isn't. It was a direct appeal case. It's not binding on state courts in any way. In fact, this court, the Sixth Circuit in Bagley versus Souders has specifically held that lesser included instructions are never constitutionally required except in death penalty cases. Michigan doesn't have the death penalty, so lesser included instructions are never required in Michigan. It was a question of state law whether or not he was entitled to a lesser included instruction. He was charged with open murder, which gives him first degree murder as an instruction, second degree murder as an instruction, and then the judge also did give an involuntary manslaughter instruction under a simple assault theory. So Keeble doesn't apply because it's not a constitutional decision. Also, the Keeble case, there was no lesser included instructions given, and in this case there were two lesser included instructions that were given. So it couldn't possibly be ineffective assistance not to ask for a second kind of involuntary manslaughter as one of the options that the jury be given. Counsel could clearly have chosen not to ask for that when they were already being given an involuntary manslaughter instruction, even though it was on the basis of a simple assault as opposed to gross negligence. Is there any evidence in the record as to why the counsel didn't request this instruction? No, Your Honor. No. And I don't even think that the defendant asked for it until after the trial was over or maybe when the jury was deliberating at the earliest. And so, you know, but counsel's request controls obviously what the judge will choose to rule on or not rule on. Right, but as I'm understanding this, the defendant himself did make a request at some point? I believe it was after the jury was already deliberating, so that would have been too late anyway. But the point is, it was a question of state law, what lesser included should be given, and the Michigan Court of Appeals held as a matter of state law that this instruction was not required because a rational view of the evidence did not support the instruction. And he did have two other lesser included instructions. Now let me move back to the pre-indictment delay. The case the counsel was just mentioning, this Monzo v. Edwards, that's a Sixth Circuit case where the Sixth Circuit is quoting some language from a 1984 opinion of the Ohio Supreme Court. I don't believe the Sixth Circuit even said what he claims it said, but even if it did, the United States Supreme Court is the only case law that's controlling, and under United States v. Lavosko, you have to show substantial prejudice and a purposeful delay to obtain a tactical advantage. Why was there the delay? The record's relatively silent on that, Your Honor. I can't make anything up for you, so I don't have an answer. Well, I'm not asking you to make it up. Absolutely. I mean, I could speculate, but the record really, I can't support speculation with the record. You would agree with the Michigan Court of Appeals that there's no justification for it? Well, they said there appears. It's not quite the same as saying, we find it doesn't matter or anything like that. They just said, you know, from the record, we're not seeing a reason for it, but it doesn't matter because we're going to move on and find there was no substantial prejudice. Generally, when the court says it appears that something wasn't done, that's, maybe in the South we'd say that's the gracious way for finding that you just didn't do what you should have done. Well, I don't know about that because, you know, there's no obligation to arrest somebody. The case law is very clear on that. They don't have to arrest you as soon as they have probable cause. They're allowed to investigate. There was a lot of investigating that went on. But the real problem is that this person is put in jail on a probation violation. According to your opponent, it was the sole cause for the placement of him in jail. Right. That's not correct, Your Honor. Okay. I will be interested in knowing, if it were the sole cause, is it your position that the person could be held in jail indefinitely because the state, for whatever reason it may have, is not ready to indict? So it could be 10 years that the person could be in jail? Well, I've got several responses. The first I would like to point out that the United States Supreme Court has never, to the best of my knowledge, ever found a pre-indictment delay violated the Constitution. Okay. So by your giving me this type of answer, I think I'm inferring that you're saying it's okay to be in for 10 years, which is totally appalling. Well, certainly. But I would point out that there are things that are like cold cases where charges are brought 20 years later. But somebody is in jail on this. And that's why I said what counsel said was wrong. He wasn't in jail because he was arrested for murder. He was in jail because he beat this woman up. There was a domestic assault charge filed. And then they violated his parole because he was on parole. He's drinking alcohol. He's, you know, doing various things he shouldn't be doing. And that's why he was sent back to prison. It was not because he was charged with murder or he committed a murder. They didn't even decide that they were going to charge him with a murder until two years later. So he was not in prison because of a murder charge. But you said because of a domestic violence? Yeah. There was a domestic violence charge? Well, I don't know if a charge was ever brought. But I think the police took him into custody because the woman had clearly been beaten up. And so they took him into custody. They violated his parole. As far as I know, nothing ever came of that. They didn't need anything to come of that because he was now being held on the parole violation. So sorry that I don't know state law the way you do. But he could be held indefinitely on the parole violation as opposed to having a parole violation hearing, at which point there would be a finding that he violated parole and a determination of what, how long he should be in jail on that? Right. Well, you know, the record, there's not a lot of information on what happened. But we do know that he was returned to prison on a parole violation for an earlier felony. And when you violate your parole, you're picked up and there either is a hearing or a waiver of a hearing, I don't know which occurred here. But he was held only on that earlier crime for which he had violated parole. He was not being held for those two years on a murder charge. So the prejudice is the failure, the asserted prejudice is the failure to find these neighbors and get their testimony perpetuated in a way that could be helpful to him. That is the only asserted prejudice. And as you pointed out, the defendant was probably better off with the police officer's testimony. But your opponent corrected me and said that the police officer did not actually testify to that effect. Well, the closing argument by defense counsel, he specifically said, now you heard the detective, he said he spoke to a bunch of the neighbors and the Nazarcos were interviewed and they weren't called. And he said anybody that wasn't called didn't hear anything. That was in the defense counsel's closing argument. That was the defense counsel as opposed to the police officer. Well, but on the basis of the police officer's testimony. He said, I interviewed all the neighbors and anybody that heard anything, I called them and they testified. That's what the police officer testified to. That's correct. Now, as to the speedy trial claim, which is based on the Sixth Amendment, pre-indictment delay is based on the Fifth Amendment. It's important to keep those distinctions. I would point out that in United States v. Howard, 218F3 at page 564, this court said only those periods of delay attributable to the state are relevant to the constitutional claim. Judge Moore, you were on that panel. And here the district court specifically said only eight months was attributable to the prosecution. So is the district court correct is the basic underlying question? And why isn't more delay attributable to the prosecution in this case? Well, I believe the district court properly calculated it out. And the United States Supreme Court has said there's not even a speedy trial issue at all if it's less than a year. And here the prosecutor is ready to go to trial at 10 months. And what we have in this case, honestly, is a classic whipsaw situation. The defendant says, I want a speedy trial. A month before trial, I want a delay. I want a speedy trial. And then another trial is scheduled. I want a delay. Three different times. He got two different attorneys to switch out. And the attorneys sought delays. Now, a case that the district court did not say but could have is Vermont v. Brillon, 556 US. And it says, because the attorney is the defendant's agent when acting or failing to act in furtherance of litigation, delay caused by defense counsel is charged against the defendant. And this is true whether counsel is retained or assigned. And then they criticize, they reverse the Vermont Supreme Court for attributing to the state delays caused by the failure of several assigned counsel to move his case forward. That seems directly applicable here to me. Now, there's also... Where does his counsel's waiver of speedy trial to the court, how does that fit in? Well, at least as for the amount of time contemplated by the waiver, it would clearly have to be. So, at least, he did reassert his right later. But until it was reasserted for all that prior time, the waiver should control. And once again, you end up with less than a year that is attributable to the state. So, help me with a hypothetical. If the defense counsel says, I waive the speedy trial rights at this particular point in time, and if the defendant is sitting there and says, no, I don't want to waive my speedy trial rights, what constitutionally should the trial judge do? Well, he either is represented or represents himself. And unless there's a change of counsel on the basis of this breakdown in whether or not there should be a waiver, counsel, his decision controls. That's the law in federal courts under the United States Speedy Trial Act, as well. So, one issue in this case is the appearance of the defendant without counsel at several pretrial hearings. Right. And then, as I understand it, at several of these hearings, the state trial court decided not to do anything but to postpone until a month later or so. Should those delays be counted against the state or should those delays be counted against the defendant or what should be done with those? Well, the first three of the four hearings, the delay should be counted against the defendant because under that Vermont case that I just said, anything attributable to defense counsel, if he didn't come to court, then the delay is attributable to the defendant. Now, the very last one, at the fourth hearing, the prosecutor did seek a three-month delay and the judge did adjourn trial for three months. So, that one would be chargeable to the state. So, why would that one not be a critical stage that counsel was missing from? Right. If you look at the critical stage case law and it's all over the map, quite frankly, the various definitions as to what can be a critical stage or isn't a critical stage, this seems to be, there has to be a great risk of something really significant happening at the hearing before it's considered a critical stage. And here, this hearing, this November 8, 2004 hearing, the transcript is only four and a half pages, hearing lasted less than five minutes. The only thing that happened was the prosecutor says, could we please have a delay of three months? And the defendant says, I object. And then the judge grants the adjournment. So, the defendant didn't lose anything because he did object. And so, that's the only thing counsel would have done if defense counsel had been there. Well, counsel could have made an argument, a legal argument. He could have, but also keep in mind that all that he needed to preserve his speedy trial claim was to make the objection and that did occur. And there was no risk that anything of consequence at trial was going to be determined. In other words, the timing of the trial was at risk, but nothing else. And the case law seems to suggest that there's got to be something more than just the timing being at risk. So, what case would you say is a good case for your case law principle there? Well, I mean, I did find an unpublished Sixth Circuit case from a couple of years ago where they said there was an adjournment because the other attorney didn't show up. And, you know, that's not a critical stage. But I would also point out, you know, it's not my obligation to point out a case. It's their obligation to say the state court decision is contrary to clearly established Supreme Court case law. And they have cited no critical stage Supreme Court case that was, in fact, violated when the Michigan Court of Appeals and the district court said this was not a critical stage type of hearing. So, even if, hypothetically, the Supreme Court has said you have a right to counsel at critical stages, you're saying you need to have a Supreme Court case saying that a pretrial hearing in a criminal case is a critical stage? I would think so. And I would also add that the district court pointed out in Coleman versus Alabama, 399 U.S. 1, they said if, in fact, there is a violation at a critical stage at a preliminary hearing, it's subject to a harmless error test, which would be different than if it had occurred at a critical stage like when the jury was seated, you know, in that kind of a situation. But if it's a pretrial hearing and the attorney is not there at all, Coleman versus Alabama says you apply a harmless error. Well, this would be a harmless error for certain because nothing of consequence happened except the trial was delayed three more months. And then, when they came up for trial, the defendant wanted an adjournment. The defendant, every time the case came for trial, the defendant asked for an adjournment. He complained the first day of trial when the case finally did go to trial, I want an adjournment. At sentencing, he said, you should have adjourned my trial. So, what was his reason for seeking an adjournment? Well, he was constantly criticizing his attorneys for a wide list of, you know, complaints. He was, you know, whipsawing the court. Yeah, I want to go to trial. No, I don't want to go to trial. Yeah, I want to go to trial. I don't like my attorney. My attorney, you know, had various complaints. But there are several spots on the record cited in our brief where the judge, you know, compliments the attorneys and said, you know, this is just a difficult client. He is a fourth offender. He's got a lot of experience in the system. And he seems pretty intelligent. I mean, he sort of understood a lot of the issues. And, you know, he was hard to control. And he complained a lot, quite frankly. And he built a lot of objections into the record. But every time it came up for trial, he wanted an adjournment. He didn't really want to go to trial, but he knew how to make an objection. Now, the last thing is this failure to investigate and no expert witness and trying to invoke Couch v. Booker. In Couch v. Booker, the defendant later produced an expert witness who said, I have a totally different theory how the victim died and testified and was cross-examined at a district court hearing. In this case, there's been no offer of proof at all as to any witnesses, expert or lay, and what they might have said or that they had any favorable evidence if there had been a more thorough or, you know, more complete investigation. So I see my time is up. And I would ask the court to affirm the district court's denial of habeas relief. Thank you. Thank you. Counsel. Yes, Your Honor. This was a jury trial, was it not? Yes, sir. And your client was found guilty of second degree murder, is that right? That is correct. It's the government's position that as it relates to the speedy trial aspect of the case, that there was a waiver, number one. And number two, and this is critical as far as I'm concerned, how has this prejudiced your client? You got all your evidence in the trial, the jury heard it all, and can you let this panel know how number one, it was not a waiver by counsel, and number two, the prejudice that your client received as a result of the jury verdict of second degree murder? Your Honor, the waiver issue is irrelevant. The alleged waiver occurred in November of 2002, which was shortly after the indictment. He wasn't tried until April of 2005. He reasserted his rights as early as May of 2003, and then reasserted them three, four, five, six times in open court. So to the extent there was any waiver, a waiver is never, you can't waive in perpetuity. I can't waive my speedy trial rights at the first arraignment, and then the state can just not try me for 25 years. The waiver only lasts until it's reasserted. It was reasserted as early as May of 2003, so the waiver issue is irrelevant. The prejudice issue here is the, my client did not get all of his evidence in. The witnesses had disappeared, and that is crucial to this, and these are witnesses that the district court said would have benefited his case. They are witnesses that would have contradicted the witnesses that the state put on the stand, and that is the prejudice, and that is classic prejudice, and that is prejudice that this court has found in other instances. The disappearance of witnesses is prejudice. And if I may, I don't need to remind this court that this is a speedy trial case at its core. When my opponent is talking about whether or not the final pretrial is a critical stage, and this is what they've done throughout this case, they've tried to negate the issue by saying, well, you know, it's just scheduling, you know, it's not a big deal. This is a speedy trial case, okay? It's a critical stage because a constitutional right, constitutional right to speedy trial was affected. So it's not just a mere matter of, you know, the state pushing through another continuance, and it's not a big deal because it's scheduling. Scheduling is required by the Constitution, or speedy trial is required by the Constitution, so a scheduling issue is a big deal here. And it's... But was that time not counted in the months that were attributed to the state's delay? That time was counted, that time was counted, but... So we're counting time, and we're looking at the delays by defense counsel. I'm just trying to work my way back through the schedule. You know, you've got, is it Calusne, and then Caltaldo? Caltaldo, I believe. And then you get over here, and you're at Arncoff. Yes, ma'am. How much time do you attribute to the state? My time is up. May I answer? Yes, definitely. The time from the time Mr. Arncoff was appointed, which is, because he was trial counsel, in June or July of 2004 until the trial. So that's the better part of a year, 10 months, 11 months. And when my opponent said that it doesn't count if it's less than a year, that's not exactly true. It's only, if it's more than a year, it's presumptive, but it still counts if it's less than a year. And again, there are two issues here when we're talking about this particular timing issue. There's the speedy trial issue. There's also the Sixth Amendment critical stage denial of counsel issue. And those two have to remain separate. So although, yes, it's counted for speedy trial purposes under the Sixth Amendment to say, okay, it's a 10-month delay, it wasn't counted. It wasn't given any credence at all with respect to the Sixth Amendment denial of counsel issue, which is where it also belongs, because that's what makes it a critical stage, is that at this critical stage, the court then allowed the prosecution, without any explanation or justification whatsoever, to delay it. And at this point, we have to remember, we're talking November 8, 2004. They've had the case for four years, and they're showing up at the final pretrial saying, we're not ready to go. Okay, what were they doing for four years? Well, you have not been able to show that this delay was intentional by the government, have you? But they asked for the continuance, so the delay was intentional. I don't see how it can be anything but intentional. My question to you, counsel, is it your position that the delay by the government was intentional, and therefore denied your client a fair trial? That's correct. I mean, I don't see how the delay could be anything other than intentional. I'm not sure that we have to prove that it's intentional, but I don't see how it could be anything other than intentional. They show up at the final pretrial and say, again, four years after his arrest, they've had the case for four years, they've had their witnesses for four years, they show up November 2004 and say, we're not ready. Okay, well, I mean, it's... That delay from November 8th to the date of the trial is intentional in the sense that they are intending to ask for a delay, and they ask for a delay. But why does that show that the delay prior to November 8th, 2004, is intentional? It just could be that they're... Negligent? ...overwhelmed with the number of cases, to put it charitably. What's the distinction between your client showing up on the day of trial and saying, not ready to go, give me a continuance, and them saying three months before trial, I need three more months in order to present this case? Well, there's two questions there, if I may. Yeah. Please answer both of them. Please. There's... I'll stand down, you begin with Judge Moore's. Okay, all right. I'll try to answer them both. The difference is, one's done by the state, one's done by my client. My client's request wasn't granted, and that doesn't justify the state's delay up until that point. You know, the state... But if... I guess I'm just confused, because the purpose of your argument is that there was an intentional delay that was inappropriate and denied your client the ability to go forward with presenting his defense. Correct. And yet, on the day trial is to proceed, your client stands up and says, I do not want to present my defense today, I want a continuance. Now, I'm seeing the... I'm not understanding how your argument evidences prejudice for this three-month period that still qualifies probably for under a year, I think you'd have to admit. And yet, your client's then desire not to go forward on the day of his trial is... That he is desperate to move forward with the presentation of his own defense. The delay, when we're looking at the delay, you know, we certainly have to chop it up into different parts and look at which part was attributable to the state, which part was attributable to the defendant. The fact that my client is a loose cannon or whatever and stands up and says, you know, I don't want to go forward when he's sitting there with counsel, a request that wasn't granted doesn't negate... Isn't that part of the question, is who occasioned the delay? And if your client is, in your terms, a loose cannon and has now requested, fair, or is acting on his own at times, and is on his third attorney requesting another delay, why doesn't that fit within our calculus of whether there was an improper delay by the state that lasted less than a year if we count and then have to attribute to your client a substantially longer period of delay? It's not a matter of saying, you know, the defendant delayed this long versus the state delayed this long. Is it not? Do we not always make that calculation and attribute to the state that which is its fault and attribute to the defendant that which is his or hers? Yes, we do. I may have phrased that ineloquently. You do the calculus, but, I mean, the fact, if my client, it's not just my client delayed more than they did. My client could have delayed for 20 years, you know, changed counsel 500 times. That still doesn't give the state the right to then delay two years, okay? They still have a speedy trial obligation. So the length of my client's blame of the delay is irrelevant, really. You really only look at the state's portion. So you can say, and, of course, there were counsel issues. You know, he changed counsel twice, and I understand that. You know, so, of course, part of the delay is attributable to that, but that doesn't, the fact that that's longer than what the state delayed doesn't negate the fact that the state has an obligation not to delay. From a constitutional standpoint, the state can't delay. You can't say, I'm longer, you're shorter. Yeah, they can't do that. I mean, we could change counsel 500 times, and that doesn't give them the right to come in and say, oh, well, you know, you caused a 10-year delay, so we get eight years. It just doesn't work that way. So then what we do is we calculate what is actually attributable to the state. Correct. And here, our argument is between eight months and less than a year, correct? I think that's accurate. Okay. I think that's accurate. Post-indictment. Pre-indictment is all on the state. Correct, yeah. And then LAVASCO applies. Yes, ma'am. Thank you very much. Thank you, Your Honors. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?